The Full Commission has reviewed the Opinion and Award and the Order of Deputy Commissioner Berger based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence in this matter. Having considered all of the evidence, the Full Commission affirms, with modifications, the Deputy Commissioners award and order and enters the following Opinion and Award:
***********
The only issues raised by defendant-carriers appeal were issues with respect to attorney fees awarded by Deputy Commissioner Berger pursuant to N.C. Gen. Stat. 97-88.1 based upon his finding that Nationwide had been unreasonable in defending this matter on a theory that the workers compensation insurance had been cancelled prior to the date of the compensable injury. Both the plaintiff and the employer also requested attorney fees pursuant to N.C. Gen. Stat. 97-88 with respect to Nationwides appeal. The Full Commission, in its discretion, denies the97-88 requests. Sanctions were requested with respect to the carriers cutting off benefits for a time without Industrial Commission approval. That request is also denied.
***********
Prior to the hearing before the Deputy Commissioner, the parties entered into a Pre-Trial Agreement. This agreement has been incorporated herein by reference. Following the hearing before the Deputy Commissioner, the Deputy Commissioner directed counsel for the plaintiff to prepare a proposed Opinion and Award setting forth findings in support of the conclusion of law that Nationwide was the carrier on the risk on the date of the plaintiffs compensable injury by accident. On December 14, 1999 the Deputy Commissioner received a draft of this proposed Opinion and Award. On December 21, 1999, the Deputy Commissioner received the defendant-carriers contentions on whether the Industrial Commission could order Nationwide to pay for the attorneys fees incurred by the defendant-employer in the defense of this claim. Nationwide presented no evidence that it had filed a Form 60, 62 or Form 21 with the Industrial Commission in this matter. The record in this matter was closed on December 21, 1999.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. On the date of the injury 6/14/99, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act, although an issue does exist as to workers compensation coverage in this matter.
3. On 6/14/99 an employment relationship then existed between plaintiff and defendant-employer.
4. The average weekly wage of the plaintiff on the date of the injury was $1,000.00.
5. On June 14, 1999, the plaintiff sustained a compensable injury by accident, which arose out of and within the course and scope of his employment with the defendant-employer.
6. As a result of the June 14, 1999 compensable injury by accident, the plaintiff has been unable to earn any wages from the date of the accident to the date of the hearing before the Deputy Commissioner.
7. Plaintiffs counsel stated into the record a summation of the testimony that the plaintiff intended to present. This summation is incorporated herein by reference.
***********
 ADDITIONAL EXHIBITS RECEIVED INTO EVIDENCE
1. An insurance policy issued November 30, 1998 marked as plaintiffs exhibit A.
2. A premium adjustment statement marked as plaintiffs exhibit A-1.
3. A workers compensation policy change form marked as plaintiffs exhibit A-2. 4. A commercial billing statement prepared on April 14, 1999 marked as plaintiffs exhibit B.
5. A commercial billing statement prepared on March 18, 1999 marked as plaintiffs exhibit C.
6. A May 20, 1999 letter marked as plaintiffs exhibit D.
7. A copy of a May 28, 1999 check marked as plaintiffs exhibit E.
8. A receipt of payment marked as plaintiffs exhibit F.
9. A July 2, 1999 letter marked as plaintiffs exhibit G.
10. A June 1, 1999 agent money transaction report marked as plaintiffs exhibit H.
11. A workers compensation loss report marked as plaintiffs exhibit I.
12. A workers compensation loss report marked as plaintiffs exhibit J.
13. A September 3, 1999 letter marked as plaintiffs exhibit K.
14. A certificate of insurance marked as plaintiffs exhibit L.
15. An April 29, 1999 notice of cancellation marked as plaintiffs exhibit M.
16. An October 13, 1999 letter from Judith Wood was marked as plaintiffs exhibit N.
17. A set of cancellation notices marked as defendants exhibit A.
18. A commercial notice of cancellation prepared March 18, 1999 marked as defendants exhibit B.
***********
Based upon the stipulations and the other competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT:
1. Ms. Erma Harwood (herein "Ms. Harwood) was the president of the defendant-employer and was the individual who dealt with the S. Craig Roberts Agency (herein the "Agency) and Mr. Stom Peterson (herein "Mr. Peterson) with respect to the insurance policy marked as plaintiffs exhibit A (herein the Policy).
2. The Agency sold only Nationwide insurance, advertised itself exclusively as an agency of Nationwide, and was identified on numerous of Nationwides documents sent to Ivy Construction, Inc. (e.g. billing statements and correspondence) as the agent of Nationwide. Mr. Peterson was an employee of the Agency, was an associate agent appointed by Nationwide, sold only Nationwide coverage, and his associate agent number appeared on numerous of Nationwides documents which were sent to Ivy Construction, Inc. The Agency and Mr. Peterson had the authority to write policies of insurance on behalf of Nationwide and thereby bind Nationwide to provide coverage upon those policies. At no time did the Agency or Mr. Peterson indicate to the Employer that there was any limitation upon the scope of the Agency or Mr. Petersons authority to act on behalf of Nationwide. Mr. Peterson was the representative of the Agency and of Nationwide who was the primary contact with Ms. Harwood and the defendant-employer with respect to the Policy.
3. The Policy was originally written for the policy year December 9, 1997 through December 9, 1998. In December 1998, the Policy was renewed to extend coverage from December 9, 1998 through December 9, 1999.
4. The defendant-employer agreed to pay its workers compensation premium pursuant to a ten pay plan. This plan allowed the defendant-employer to combine all premiums owed by the defendant-employer and another corporate entity, H H Utilities, Inc. into one monthly premium payment. The provisions of the ten pay plan required a 20 percent deposit and nine equal monthly installments. The Agency and Mr. Peterson lacked the actual authority to accept a partial payment under this plan.
5. On April 28, 1999, Nationwide sent a notice of cancellation that stated that the Policy would be cancelled "on May 28, 1999 at 12:01 a.m-12:00 noon with policies with this provision.
6. On May 20, 1999, the Agency mailed a Nationwide-generated letter to the defendant-employer indicating that a $1,060.00 premium was due on the Policy "in order to keep your coverage in force, and further indicating that the "last day the premium can be received is 5/28/99. This letter stated the total premium due to maintain continuous coverage under the Policy, and stated the last date on which the premium payment could be received to maintain continuous coverage under the Policy. Unlike the April 28, 1999 letter, this letter did not limit the employer to paying the premium owed to Nationwide by a specific time on May 28, 1999. Exhibit D represented to Ivy Construction that if the workers compensation payment of $1,060.00 was received on time, the coverage would continue without any lapse.
7. Pursuant to the Policy and also pursuant to the course of dealing established during 1998 and early 1999 between Ms. Harwood and Mr. Peterson, one of the accepted methods for "payment of a premium was hand delivery of a check to Mr. Peterson or the Agency, assuming that the check was later honored by the bank.
8. On May 28, 1999, during normal business hours, Ms. Harwood went to the Agency and met with Mr. Peterson. She asked Mr. Peterson what sum she needed to pay to him to maintain coverage under all of the defendant-employers insurance policies with Nationwide (including the Policy). Mr. Peterson, utilizing a computer that was connected directly with Nationwide, indicated to Ms. Harwood that the total sum needed was $4,314.00. Ms. Harwood then wrote a check for that amount from the defendant-employers checking account and tendered the check to Mr. Peterson. Ms. Harwood would have written the check in whatever amount Mr. Peterson indicated to her. Mr. Peterson accepted the check. Mr. Peterson then entered the payment into the computer and gave Ms. Harwood a receipt showing payment of the $1,060.00 sum due on the Policy (plus a payment of a $3,254.00 premium due on another, non-workers compensation insurance policy with Nationwide). Prior to May 28, 1999, Stom Peterson, on behalf of Nationwide, had established a pattern and practice with Ms. Harwood with respect to her coming into the office, asking him how much was due on certain premiums, and paying that amount on the spot.
9. When Mr. Peterson accepted the payment from Ms. Harwood on May 28, 1999, it was his intention and belief that the $1,060.00 portion of the payment was payment in full of the premium then due on the Policy. At that time, Mr. Peterson led Ms. Harwood to believe that the defendant-employers workers compensation insurance coverage with Nationwide would continue in full force and effect without any lapse in coverage following that 5/28/99 payment. However, the computer screen reviewed by Mr. Peterson did not include all of premium amounts owed by the defendant-employer on that date.
10. No other premium payments became due on the Policy between 5/28/99 and the June 14, 1999 compensable injury by accident in which the employee sustained a fractured cervical spine and other injuries in a job-related automobile accident.
11. The check with which Ms. Harwood made the 5/28/99 payment to Mr. Peterson was honored by the defendant-employers bank.
12. Mr. Peterson reported the 5/28/99 payment of $1,060.00 by the defendant-employer on his remittance report to Nationwide on June 1, 1999. Between 5/28/99 and 6/14/199 accident, neither Mr. Peterson nor the defendant-employer nor the plaintiff received any indication whatsoever from Nationwide that the payment made on 5/28/99 was either insufficient or delinquent, or that the workers compensation coverage under the Policy was in any way in jeopardy.
13. Shortly after the accident, Ms. Harwood reported the serious injuries of the plaintiff and of another employee by telephone to Nationwide (see plaintiffs exhibits I and J). Several days thereafter, in a letter dated 7/2/99, Nationwide for the first time indicated that it considered the workers compensation coverage under the Policy to have been cancelled, claiming that the payment made and accepted on 5/28/99 had been both late and insufficient. The defendant-employer and Mr. Peterson received their copies of this letter on 7/7/99 and 7/8/99, respectively. Until their receipt of the defendant-carriers letter dated 7/2/99, both the defendant-employer and Mr. Peterson believed that the workers compensation coverage under the Policy had remained in full force and effect following Ms. Harwoods 5/28/99 payment to Mr. Peterson.
14. On the day she received the defendant-carriers letter of 7/2/99, and thereby became aware that the defendant-employers workers compensation coverage was being questioned, Ms. Harwood obtained other workers compensation coverage with another agency and another carrier. Had she been aware that the coverage under the Policy was in jeopardy on any earlier date, she would have obtained alternative workers compensation coverage at that earlier time.
15. The Agency and Mr. Peterson lacked the actual authority to bind Nationwide to a contract for insurance on a policy that that had been cancelled without approval from the underwriting department for the defendant-carrier.
16. Nationwide unilaterally discontinued payment of temporary total disability compensation to the plaintiff without the permission of the Industrial Commission. As a result of this, the employee had to sell his truck and riding lawnmower and had to borrow money in order to help his wife and three children subsist.
17. The defendant-carriers defense of this claim was based upon stubborn, unfounded litigiousness. Based upon the prior course of dealing and the facts presented, the defendant-carriers defense was unreasonable. It is a reasonable inference from the facts that, had the serious injury of June 14, 1999 not have occurred, Nationwide would have accepted late payment of any sums due just as it had previously done. It is also a reasonable inference from the facts that the employer always paid whatever premiums and retrospective premiums that were due on the policy whenever the employer was told the amount of those payments on "payment day.
18. The reasonable attorney fees of the employer-defendant as a result of defendant-carriers unreasonable defense of this claim was $4,280.00.
19. The Deputy Commissioner erroneously ordered Nationwide to pay the plaintiff $666.67 per week, which was inconsistent with the maximum compensation rate of $560.00 per week for injuries occurring in calendar year 1999.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 14, 1999, Nationwide was the carrier on the risk for the compensable injury by accident sustained by the plaintiff. The contract for workers compensation insurance between the defendant-employer and defendant-carrier remained in effect upon the payment of $1,060.00 by the defendant-employer on May 28, 1999. The May 28, 1999 letter expanded the time period set forth in the April 20, 1999 letter to include the entire day in which the defendant-employer could make a premium payment and maintain continuous workers compensation coverage.
2. Even assuming that the policy had been cancelled by the time that the defendant-employer sought to pay the premium to Mr. Peterson, Mr. Peterson had the apparent authority to bind Nationwide to the terms of the insurance contract previously entered into by the defendant-employer and defendant-carrier. Mr. Petersons acceptance of payment by Nationwide bound Nationwide to the provisions of the Policy. Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. Mr. Peterson clearly had the actual authority to enter into insurance contracts on behalf of the defendant-carrier. Nationwide took no action that put the defendant-employer on notice that Mr. Peterson would be exceeding his actual authority by accepting a partial payment on a policy that had been cancelled. The defendant-employer exercised reasonable care in believing that Nationwide had conferred authority upon Mr. Peterson to accept the payment that Ms. Harwood made to him on May 28, 1999. MutualBenefit Insurance Company v. City of Winston-Salem, 100 N.C. App. 300,395 S.E.2d 705(1990).
3. Plaintiff is entitled to receive temporary total disability compensation in the amount of $560.00 per week for the time period beginning June 14, 1999 to the present and continuing. N.C. Gen. Stat. 97-29.
4. Nationwide is entitled to receive a credit for payment of temporary total disability compensation made to the plaintiff prior to its decision to terminate benefits. Tucker v. Workable Company, 129 N.C. App. 695;501 S.E.2d 360 (1998); N.C. Gen. Stat. 97-42.
5. The defendant-carriers denial of coverage and its decision to unilaterally discontinue plaintiffs ongoing temporary total disability compensation was without reasonable ground and was based in stubborn, unfounded litigiousness. N.C. Gen. Stat. 97-88.1.
6. Where the carriers defense of lack of coverage is unreasonable, N.C. Gen. Stat. 97-88.1 applies both to the attorneys fees of plaintiffs counsel and to the attorneys fees of defendant-employers counsel. N.C. Gen. Stat. 97-88.1. The purpose of this section is to "deter stubborn, unfounded litigiousness, which is inharmonious with [t]he primary consideration [of the Workers Compensation Act, viz.,] . . . compensation for injured employees. Sparks vs. Mountain Breeze Restaurant And FishHouse, 55 N.C. App. 663, 286 S.E.2d 575 (1982). The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness. Donnell v. Cone Mills Corp.,60 N.C. App. 338, 299 S.E.2d 436 (1983).
***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following
 AWARD
1. Nationwide shall pay the plaintiff temporary total disability compensation in the amount of $560.00 per week for the time period beginning June 14, 1999 to the present and continuing until further order of the Industrial Commission. The portion of this Award that has accrued shall be paid in a lump sum amount directly to the plaintiff. Nationwide may receive credit for amounts already paid. No amount shall be deducted from this award to pay Mr. Daniels attorneys fees.
2. Nationwide shall pay attorneys fees to Mr. Richard Daniels in an amount equal to twenty-five percent of all weekly benefits owed to the plaintiff. The portion of this amount that has accrued shall be paid in a lump sum directly to Mr. Daniels. Thereafter, the defendant-carrier shall pay Mr. Daniels $140.00 per week until further order of the Industrial Commission. This amount is taxed as costs pursuant to N.C. Gen. Stat.97-88.1 for defendant-carriers defense of this matter without reasonable ground and for its stubborn, unfounded litigiousness.
3. Nationwide shall pay attorneys fees to the employers attorneys in the amount of $4,280.00. This amount is taxed as costs pursuant to N.C. Gen. Stat. 97-88.1 for defendant-carriers defense of this matter without reasonable ground and for its stubborn, unfounded litigiousness.
4. Nationwide shall pay interest, at the legal rate, on all unpaid medical bills incurred by the plaintiff from the effective date of the defendant-carriers denial of the coverage through the date on which Nationwide fully pays those bills as approved. This amount shall be paid directly to the plaintiff.
5. Nationwide shall pay the costs.
This 25th day of September 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/________________ RENÉE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER